## TAPPAN, McKILLOP & CO. v. HARBISON, et al.

1. FRAUDULENT CONVEYANCE: *Innocent purchaser*: *Equitable garnishee*: *Practice*.
On the 17th of May, 1872, Harbison executed a note to Filer, Stowell & Co., for $618.13. On the 25th of October, 1872, Harbison and wife conveyed to Curry in fraud of his creditors, a large body of lands, and afterwards on the 20th of December, 1872, Curry conveyed the lands to Mrs. Harbison without any consideration paid by her, and afterwards Mrs. Harbison sold and conveyed the lands to Hamlet for $2000, one third cash, the balance on time. On the 16th of February, 1876, Filer, Stowell & Co., recovered judgment on the note, and afterwards levied execution on the lands and filed their bill in equity to uncover the fraud and sell the lands for satisfaction of the judgment, or if that could not be done, that Hamlet be held as an equitable garnishee and pay the judgment out of the unpaid purchase money. It conceded that Hamlet was an innocent purchaser. Harbison and wife answered, denying the fraud, and Harbison filed a cross-bill alleging that Hamlet had purchased the judgment pending this suit, for one-fourth of its amount, and the suit was prosecuted for his benefit to get credit on the purchase money for the full amount of the judgment. HELD: That it being conceded in the bill that Hamlet was an innocent purchaser, he could

Tappan, McKillop & Co. v. Harbison et al.

be held only as an equitable garnishee to the amount of the judg
ment: but if he had in fact purchased the judgment at a discount,
he could not speculate upon his purchase, but would be allowed
as a credit on the unpaid purchase money only the sum he had
paid for the judgment and interest on it. HELD FURTHER : that
the matter of the cross-bill might be set up by supplemental an-
swer of Mrs. Harbison on return of the case to the Circuit Court

APPEAL from *Ashley* Circuit Court in Chancery.

Hon. J. M. BRADLEY, Circuit Judge.

*M. L. Hawkins* and *T. B. Martin* for appellants.

Conveyances made to hinder or delay or defraud cred-
itors are void. *Gantt's Dig. Sec.* 2954 ; 14 *Ark.*, 69 ; 4 *Vt.*,
405 ; *Bump Fr. Couv.*, 234; 3 *John. Ch.*, 500 ; 23 *Ark.*, 259;
29 *Ala.*, 607 ; 3 *Dev.*, (*N. C.*) 39. The frauds in the Har-
bison–Curry conveyances were participated in by all par-
ties to them. 17 *Ark.*, 146 ; 26 *Conn.*, 480 ; 37 *Ill.*, 341. If
these conveyances are fraudulent and void they conveyed
no title, and plaintiff's judgment and execution were
valid liens upon the land. 14 *Ark.*, 69.

If Hamlet bought before the levy he is an innocent
purchaser and will be protected, if after, he had notice
of the lien. Even if an innocent purchaser, the balance
due from him is subject to equitable garnishment to pay
appellant's debt.

EAKIN, J. This is a bill by a creditor firm, which has
obtained a judgment and levied upon certain lands.

The object of the suit is to set aside as fraudulent, sales
and conveyances of the lands emanating from the debtor
after the debt had been contracted, in order that there
may be a clear title made on the execution sale. The
debtor and others claiming under him are made defend-
ants.

The pleadings and evidence disclose beyond reasonable controversy, the following facts :

On the 17th of May, 1872, P. F. and J. P. Harbison executed to Filer, Stowell & Co. their note for $618.13, due Jan. 1st, 1873, with interest at ten pr. ct. pr. annum: This note was endorsed by the payees to Tappan, McKillop & Co., for collecton.

On the 25th day of October 1872, P. F. Harbison with M. J. S. Harbison, his wife, for the expressed consideration of $2250 conveyed to R. S. Curry a body of lands containing in all 760 acres, together with certain horses, mules, cattle, hogs and all his farming utensils, and household and kitchen furniture of whatsoever description. Mrs. Harbison released all her dower in the lands, and conveyed all her interests in the other property. This was filed for record on the 18th of December, 1872. Curry is the brother-in-law of Harbison. He paid nothing on the purchase, but executed his notes for the purchase-money. He did not take possession of the property, but left it all in the posseesion, and under the control of P. F. Harbison.

On the 20 of December, 1872, R. S. Curry for the expressed consideration of fifty dollars, paid in cash, and for "other good and valuable considerations," conveyed to said M. J. S. Harbison all of said lands save a quarter section, being the S-W¼ of sec. 31, in township 16, S. of R. 8 W., and conveyed also all the personal property, by the same general description, which had been conveyed to him by her husband and herself. In consideration of this conveyance, his notes which he had executed for the property, were given up and he did receive the fifty dollars in cash, although there is no proof that it was paid to him by Mrs. Harbison, out of any separate fund of her own. This deed was duly acknowledged on

the day of its execution, but not filed for record until the 7th day of October, 1874.

Afterwards Mrs. Harbison sold and conveyed the land to Thomas Hamlett, who, on all hands, is conceded to have been an innocent purchaser. The deed to Hamlett is not exhibited, but is admitted to have been made, for the consideration of two thousand dollars, of which one-third was paid in cash. The balance remains unpaid.

The judgment against J. P. and P. F. Harbison, in favor of these complaints, was recovered on the 16th of February, 1876. Execution was issued on the 10th of October following and levied upon all the lands conveyed as aforesaid to Curry.

The complainants, charging that the foregoing deeds were made in fraud of creditors, seek to subject the lands to the payment of the judgment ; or conceding that Hamlett's purchase was *bona fide*, they seek to hold him as an equitable garnishee, with regard to the unpaid purchase-money, to the extent of the judgment. This was for the sum of $811.19 with interest thereafter at the rate of ten pr. ct. pr. annum, and costs. Harbison and wife, Curry, and Hamlett were made defendants.

All answered in accordance with the facts above stated, but each denying the fraudulent intent, and protesting good faith. Mrs. Harbison says that she paid the money to Curry out of her own means, which she explains by saying that she owned property before her marriage out of which it was raised.

P. F. Harbison, the husband, says in addition, that the note upon which the judgment was recovered was a forgery, but alleges no *sufficient* reason why that defense was not made at law, in the suit in which judgment was had. He further makes his answer a cross-bill, alleging that the judgment in question had been purchased pending

the suit, by Hamlett at a large discount, about one-fourth;
that the present suit was now prosecuted in the name of
complainants by collusion, in order that Hamlett might
obtain the full amount of the judgment with interest as
a credit upon the unpaid purchase-money due Mrs. Har-
bison.    There is a prayer for general relief.   All the
other parties save Curry and Mrs. Harbison are made de-
fendants to the cross-bill.   A demurrer to it was sus-
tained by the court, to which P. F. Harbison excepted.
There was no judgment dismissing the cross-bill.

The cause was heard upon the original bill, pleadings,
exhibits, and depositions, and the original bill was dis-
missed for want of equity.   The complainants appeal.

Without recapitulating the evidence we may say it is
plain, that P. F. Harbison being indebted at the time,
made the conveyance to Curry in the hope and expecta-
tion of saving the property from execution.   He did not
consider it fraudulent to do that, as he thought J. P. Har-
bison, his partner, ought to pay the debt, and it is quite
probable that Mrs. Harbison and Curry shared in that
view.   Yet the deed and concurrent circumstances con-
tain several *indicia* of fraud.   The lands do not lie in a
body suitable for farming or any purpose likely to induce
a purchaser to desire them all together.   The relation of
the parties is such, as properly to require their transac-
tions to be regarded with care in matters detrimental to
creditors.   The sweeping conveyance with the lands, of
personal property having no connection with the only
avowed object of Curry, which was a hope of reselling
the lands at a profit; the conveyance of all the house-
hold and kitchen furniture; the continued possession and
control of the vendor; the fact that Curry paid abso-
lutely nothing save his note which was given by the hus-
band in a short time to his wife, and redelivered to Curry

upon a conveyance to Mrs. Harbison of the whole body of the lands save a quarter section; the want of any clear showing that the fifty dollars paid him was the *separate* property of the wife, are all too potent to be resisted. The conveyances from Harbison to Curry, and from the latter to Mrs. Harbison were such as the law avoids, as against creditors, although good as between parties. The property stood before the conveyance to Hamlett, precisely in equity as if there had been no circuitous course, but as if P. F. Harbison had made, directly, a gratuitous conveyance to his wife, for love and affection. It was still liable to execution in favor of creditors.

The bill, somewhat strangely, in view of all the facts shown in evidence, which should have put Hamlett on enquiry, concedes that he was an innocent purchaser at the time of the bargain and conveyance to him. It results from this concession which complainants had the right to make, that Hamlett is entitled to protection not only as to the cash payment, but also as to any advantages of his bargain. He is subject to equitable garnishment for the unpaid purchase-money, to be enforced, if necessary, by a sale of the property, but the balance of the purchase-money, if any, would belong to Mrs. Harbison. No one, save creditors, has any right to complain of any advantages given to her by her husband and her connection, Curry.

The complainants have an equity to subject the debt due Mrs. Harbison for the land from Hamlett, by way of equitable garnishment, for their debt to the amount that may be due them. The court erred in dismissing their bill. This equity may be worked out by the court, through any of the ordinary proceedings which the Chancellor may deem most appropriate. An account should be taken either by the Chancellor, or if necessary,

*Equitable garnishment.*

through a master, and if the amount, when ascertained, should not be paid by Hamlett it may be enforced by sale of the lands, and distribution of the proceeds, in ac·cordance with the rights of the parties.

As this cause must for this error be reversed, and as it will be necessary to remand it for further proceedings it becomes necessary to complete justice, to notice the matter attempted to be set up by the cross-bill to which a demurrer was sustained. The matter of it was evidently in behalf of Mrs. Harbison, although it was set up by her husband, who had no interest in the debt for which Hamlett was endeavoring, as alleged, to obtain improper credits by speculation. Ordinarily this court does not encourage the making of new cases, or important changes in the matters pleaded, after the parties have gone to hearing, but the rule is not inflexible that there should be no changes nor amendments at all. The matters attempted to be set up by Mrs. Harbison's husband concern her very materially. Whether they be true or not we cannot determine; but if they be true, and Hamlett has bought in the claim of complainants, he must be held to have bought for his vendor's benefit; and would only be entitled to a credit for the amount paid with interest. As the amount of the decree in the equitable garnishment against himself, would be the measure of his credit upon the debt due Mrs. Harbison, she has certainly an equitable defense *pro tanto*, against that claim. If she be still allowed to set it up, it will not be the assertion of any new matter distinct from the suit, but equitable matter proper to the determination of the correct amount for which the decree against her should be rendered, and that arising pending the suit, or at least from all that appears, discovered afterwards. We think it equitable that she shall not, by her husband's informal and mis-

taken effort to make this defense for her, be cut off from all opportunity of showing her rights whilst the matter may be *in fieri*.

There is, therefore, nothing in this decision which is intended to preclude the Chancellor from allowing her to set up this matter still, by supplemental answer, if she be so advised ; and that upon such terms as he may deem just to all parties.

Reverse and remand for further proceeding, consistent with this opinion, and with the principles and practice in equity.